## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DASHAY JONES, | ) | CASE NO. 3:22-CV-02135-SO |
| Petitioner, | ) | |
| | ) | U.S. DISTRICT JUDGE |
| | ) | SOLOMON OLIVER, JR. |
| v. | ) | |
| | ) | U.S. MAGISTRATE JUDGE |
| WARDEN DENNIS SULLIVAN, | ) | JENNIFER DOWDELL ARMSTRONG |
| Respondent, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |

### I.    INTRODUCTION

Petitioner, Dashay Jones ("Mr. Jones"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1).  Mr. Jones was convicted of one count of possession of cocaine, which included a major drug offender specification.  The trial court subsequently found that Mr. Jones was a major drug offender and sentenced him to a mandatory 11-year prison term.

Mr. Jones' petition asserts two grounds for relief.[1]  This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Mr. Jones' petition. (ECF No. 3). For the reasons set forth below, I RECOMMEND that the Court DISMISS and/or DENY Mr. Jones' petition. I further recommend that the Court not grant Mr. Jones a certificate of appealability.

---

[1] On July 25, 2024, I issued a Report and Recommendation recommending that this Court deny Mr. Jones' Motion to Amend his petition (ECF No. 16) to add two new grounds because: (1) the two new grounds he asserts are procedurally defaulted because he did not appeal them to the Supreme Court of Ohio; (2) he failed to establish cause or prejudice for the default; and (3) none of the new evidence Mr. Jones points to is new, reliable, exculpatory evidence, scientific evidence, trustworthy eyewitness accounts, or critical physical evidence necessary to determine actual innocence. (*See* ECF No. 27). Judge Oliver adopted that Report and Recommendation on August 15, 2024. (ECF No. 28). On August 27, 2024, Mr. Jones filed an objection (ECF No. 30) to the Report and Recommendation, based in part on the fact that he had not received the July 25, 2024, Report and Recommendation. Mr. Jones filed an additional objection on September 16, 2024 (ECF No. 31).  Both objections are pending.

Finally, I recommend that Tom Watson, the current Warden of North Central Correctional Complex, be substituted for Dennis Sullivan as the Respondent in this case.[2]

## I.     RELEVANT FACTUAL BACKGROUND

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Spagnola v. Horton*, No. 17-1462, 2017 WL 8948745, at *2 (6th Cir. 2017). The Ohio Court of Appeals for the Sixth District set forth the following facts on direct appeal:

> {¶ 2} On July 12, 2017, the Erie County Grand Jury returned a two-count indictment against appellant, charging him with one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(f), a felony of the first degree, and one count of trafficking in cocaine in violation of R.C. 2925.03(A)(1) and (C)(4)(g), a felony of the first degree. Both counts included a major drug offender specification under R.C. 2941.1410(A), and a specification for forfeiture of $2,270 under R.C. 2941.1417(A). The charges arose from a traffic stop on January 3, 2017, during which a large amount of cocaine was allegedly discovered in appellant's vehicle.

> {¶ 3} On November 15, 2017, appellant moved to suppress the evidence recovered from the traffic stop arguing, inter alia, that the initial stop was unconstitutional, and that the stop was unconstitutionally delayed while a drug canine was brought to the scene.

> {¶ 4} A suppression hearing was held over the course of four days on April 19, April 26, June 11, and July 16, 2018. At the suppression hearing, Sandusky Police Detective Ron Brotherton testified that on January 3, 2017, he was conducting surveillance at a motel in Huron Township, Ohio, as part of a joint investigation with the Erie County Sheriff's Department regarding suspected drug trafficking. During the surveillance, he observed appellant arrive to the motel driving a blue Chrysler minivan. Brotherton testified that appellant was under investigation as a large-scale cocaine trafficker in and around Sandusky, Ohio.

> {¶ 5} Brotherton observed appellant enter the motel with only a cell phone in hand. Brotherton contacted the motel manager, who informed him that appellant was going in

---

[2] Dennis Sullivan was previously the Warden of North Central Correctional Complex, where Mr. Jones is incarcerated. Tom Watson, however, is now Warden of that facility. *See* https://drc.ohio.gov/about/facilities/north-central-correctional-complex (last visited on Sept. 30, 2024.) Thus, Warden Tom Watson should be substituted as the proper respondent in this case. See 28 U.S.C. § 2243 ("The writ ... shall be directed to the person having custody of the person detained."); Fed. R. Civ. P. 25(d) (providing that, "when a public officer who is a party in an official capacity ... ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

the direction of a room rented by Deona Green. Brotherton learned from Detective Adam West, a member of the narcotics task force, that Green is one of appellant's top phone contacts. Green is from Lima, Ohio, and Brotherton knew that appellant had connections in Lima. Brotherton testified that he also knew that appellant was transporting and trafficking a large amount of cocaine in and around Sandusky. Approximately 15 minutes after he entered, appellant exited the motel carrying a plastic bag that appeared to be full. Appellant entered his blue van and left the area.

{¶ 6}  When appellant left, Brotherton and Lieutenant Danny Lewis of the Sandusky Police Department followed him in an unmarked police car. Brotherton testified that as appellant was travelling westbound on Cleveland Road, appellant committed several traffic violations in that his vehicle went over the double yellow line, then went over the solid white roadway edge line, and again touched the solid white lane divider line near Pipe Street. Brotherton testified that Lieutenant Lewis had called for a marked unit numerous times, but did not get a response. Consequently, Brotherton initiated a traffic stop on Cleveland Road near Farwell Street. Brotherton explained that appellant's father lived right around the corner, and he did not want appellant to get home before they had a chance to initiate a stop.

{¶ 7}  The stop took place at 3:14 p.m. Brotherton testified that as he spoke with appellant, he observed that appellant was speaking softly and his eyes were extremely wide open. Brotherton described that it looked like appellant had seen a ghost. Brotherton also noticed that appellant was breathing at a rapid rate, his chest was rising and falling quickly, the carotid artery in his neck was beating rapidly, and his mouth appeared to become very dry. Brotherton testified that when he informed appellant of the numerous traffic violations as the reason for the stop, appellant apologized and said he was on his cell phone because his friend had just text messaged him to see if he wanted to work out.

{¶ 8}  During the stop, at 3:29 p.m. the K9 unit arrived. Brotherton asked appellant for consent to search the car, which appellant denied. At 3:30 p.m., Brotherton had appellant roll up his driver's side window in preparation of having the drug canine conduct a free-air sniff. The dog alerted to the presence of narcotics, at which point Brotherton asked appellant to step out of the car at 3:32 p.m. Brotherton then searched the car. In a "Stow 'n Go" compartment between the front seats and middle row of seats, the K9 officer discovered a black Crown Royal bag. Brotherton recovered the Crown Royal bag and found that it contained four bags of suspected cocaine and crack cocaine.

{¶ 9}  On the second day of the suppression hearing, the K9 officer, Sandusky Police Officer Evan Estep, testified for the state. Estep testified that he arrived on scene with his trained narcotics dog Gunner. Estep had Gunner perform a free-air sniff around the vehicle during which Gunner gave his trained passive response to the presence of narcotics. Estep then assisted in the search of the vehicle with Brotherton, and by 3:37 p.m. they had located the presence of the suspected cocaine. Estep took the Crown Royal Bag, and in front of a car mounted camera, emptied the bag onto the hood of a patrol car revealing four separate bags of suspected cocaine.

3

{¶ 10} Appellant began his presentation of evidence on the third day of the suppression hearing. As his first witness, appellant called Carl Douglas Klein. Klein is a local photographer and videographer, and he authenticated videos and pictures that he took of the roadway near where appellant was alleged to have committed the lane violations, and of the motel where Brotherton had been conducting surveillance.

{¶ 11} Appellant's next witness was Alejandro Minor. Minor testified that on December 19, 2017—nearly a year after appellant was stopped and the drugs were discovered in his vehicle—he was giving a ride to appellant as a courtesy service as part of his automobile repair business. Minor testified that while he was driving appellant, he was pulled over by Brotherton, who was driving an unmarked silver Chevy Tahoe. Brotherton explained that Minor had committed the traffic violation of crossing marked lanes. Minor testified that he did not commit any such violation. Minor further testified that Brotherton looked right past Minor, and focused on appellant, who was sitting in the passenger seat. Brotherton asked for consent to search the vehicle, which Minor provided. Brotherton proceeded to search the car and in so doing "made a mess." Thereafter, Brotherton ended the encounter by issuing a traffic warning to Minor. Minor felt so upset by the encounter and by how he was treated by Brotherton that he filed a complaint with the Sandusky Police Department.

{¶ 12} Appellant then attempted to call several witnesses—out of purportedly scores of witnesses—that he claimed would have testified to numerous occasions on which Brotherton, while driving an unmarked vehicle, initiated traffic stops for marked lane violations or turn signal violations. Appellant asserted that those traffic stops were not based on actual violations, but instead were mere pretexts for Brotherton to further his drug investigations. Furthermore, appellant explained that he sought to introduce such testimony to prove that Brotherton was not telling the truth in the present case when he testified that appellant committed marked lanes violations. The state objected to appellant's presentation of those witnesses pursuant to Evid.R. 608(B), which states "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence." The trial court agreed, and sustained the state's objection.

{¶ 13} On the final day of the suppression hearing, appellant called Sandusky Police Lieutenant Danny Lewis as a witness. Lewis testified that on January 3, 2017, he was in Huron Township, surveilling a motel for suspected drug activity based on information from a source. While on surveillance, Lewis observed appellant arrive in a blue Chrysler minivan. Lewis testified that he recognized appellant from back when he played high school basketball and from around the town. Lewis also remembered appellant from a drug investigation that took place one or two years earlier where a large amount of cocaine was found in a gutter near appellant's residence. No one was arrested as a result of that investigation.

{¶ 14} Lewis testified that approximately 15 minutes elapsed between when appellant entered the motel and when he exited. After appellant exited the motel, Lewis and Brotherton followed him in their unmarked vehicle. Lewis testified that they were about

4

four to five car lengths behind appellant when Lewis observed appellant's vehicle go across or touch the double yellow lines, and then touch the white lane divider line near Pipe Street.

{¶ 15} When the traffic stop was initiated, Lewis began the process of writing a written warning. Lewis testified that the unmarked car he was in did not contain a computer, so Lewis first attempted to run the vehicle's registration and appellant's driver's license over the telephone. Lewis encountered some difficulty using the telephone, so he then used the radio to obtain appellant's information. Lewis testified that while he was in the process of writing the written warning, Estep arrived and conducted the free-air sniff. It was not until after the canine unit had alerted to the presence of narcotics and the search of the vehicle had begun that Lewis completed the written warning and gave it to appellant.

{¶ 16} Appellant was the final witness to testify at the suppression hearing. Appellant testified that he did not recall touching either the yellow lines or the white line on January 3, 2017.

{¶ 17} On August 20, 2018, the trial court summarily denied appellant's motion to suppress. The court provided no reasoning for its decision.

{¶ 18} On June 24, 2019, the state filed a notice of its intent to introduce Evid.R. 404(B) evidence. The state argued that it was necessary to introduce evidence of appellant's 2002 and 2003 criminal convictions for narcotics trafficking to prove appellant's knowledge, intent, and lack of mistake or accident in his possession of the drugs. Appellant filed a motion in limine to prevent the introduction of this evidence, arguing that it was not offered for an admissible purpose, but rather was being used simply to show appellant's propensity and character as a drug dealer.

{¶ 19} On September 16, 2019, appellant moved to dismiss the indictment, or alternatively to continue the start of the trial, after being informed by the state that the alleged cocaine that had been seized from appellant's vehicle had been destroyed. The trial court denied appellant's motion to dismiss, but did continue the start of the trial.

{¶ 20} The trial ultimately commenced on October 2, 2019. Prior to its start, the state dismissed the count of trafficking in cocaine. The trial then proceeded over the course of six days on the count of possession of cocaine. At the trial, the following evidence and testimony were presented.

{¶ 21} Rebecca Wang, a forensic chemist with the Drug Enforcement Administration, testified that she examined four exhibits submitted to her that were numbered 28, 29, 30, and 31. Wang testified that all four exhibits contained cocaine and were in a powder form. Exhibits 28 and 30 contained cocaine hydrochloride, and exhibits 29 and 31 contained cocaine base.

{¶ 22} Wang also testified concerning the "DEA-7" form that she received along with the drugs that were sent to the laboratory. The DEA-7 form contained remarks signed by Detective Adam West that the exhibits 28, 29, 30, and 31, were seized as a result of a traffic

stop on Dashay Jones in Sandusky, Ohio on 01-03-2017. Detective Ronald Brotherton maintained control and custody of the above exhibits until they were turned over to TFO West on 01-06-2017. On 01-06-2017, TFO West, as witnessed by TFO Hunter, forwarded the exhibits to the DEA North Central Laboratory for analysis and safekeeping.

Notably, Wang testified that the weight of the drugs listed on the DEA-7 form matched her conclusions as to the weight of the drugs that she examined. Specifically, exhibit 28 was listed as 144.5 grams, and Wang measured it as 144.0 grams; exhibit 29 was listed as 102.1 grams, and she measured it as 100.7 grams; exhibit 30 was listed as 50.9 grams, and she measured it as 50.6 grams; and exhibit 31 was listed as 33.7 grams, and she measured it as 33.0 grams. Wang testified that the slight differences in the weights were attributable to differences in the scales, different people and practices, and other things such as humidity.

{¶ 23} The state next called Officer Evan Estep. Estep testified that he responded to the traffic stop on January 3, 2017, with his canine Gunner. Estep conducted a free-air search of the vehicle with Gunner, who alerted to the presence of narcotics. Estep then assisted in the search of the vehicle and discovered a Crown Royal bag located in a storage compartment. Estep pointed out the Crown Royal bag to Brotherton, who looked inside of it and discovered the suspected cocaine. While Brotherton was arresting appellant, Estep took the Crown Royal bag and displayed its contents in front of the dash camera on Officer Schock's patrol cruiser. As shown in the video from the dash camera, the Crown Royal bag contained four bags of suspected drugs.

{¶ 24} The next witness to testify was Detective Brotherton. Brotherton testified that on January 3, 2017, he was conducting surveillance on a known drug dealer at the Motel 6 in Huron Township, Ohio. While he was conducting surveillance, appellant arrived in a blue Chrysler minivan that Brotherton had seen appellant driving before on numerous occasions. Appellant entered the motel carrying only his cellphone. Approximately 15 minutes later, appellant exited the motel carrying a plastic grocery bag that appeared to be full.

{¶ 25} Brotherton then followed appellant in his vehicle. After observing traffic violations, Brotherton initiated a traffic stop near the Thirsty Pony on Cleveland Road in Sandusky, Ohio. Brotherton approached the vehicle and began speaking with appellant. Brotherton testified that he noticed that appellant was speaking very softly, that his eyes were wide open, that his chest was rising and falling rapidly, and that his carotid artery was pulsating. Brotherton testified that appellant stated that he was coming from work, but Brotherton knew that appellant had gotten off work a few hours earlier. Appellant then explained that he had to pay some bills, and he later stated that he picked up a Christmas gift from his mother's house, which Brotherton characterized as appellant changing his story. Brotherton explained that all of those observations were criminal indicators.

{¶ 26} Shortly thereafter, once the K9 unit indicated the presence of narcotics, Brotherton asked appellant to exit the vehicle and Brotherton began his search of the interior. Brotherton testified that Estep observed the Crown Royal bag in the storage container behind the front seats. Brotherton then retrieved the Crown Royal bag and observed the

suspected narcotics inside it. Brotherton testified that the drugs had a street value of approximately $10,000. At that point, Brotherton placed appellant under arrest. A search of appellant's person revealed $2,270 in cash.

{¶ 27} In addition to the suspected drugs and cash, Brotherton also testified regarding two cell phones that were also seized during the stop. On one of the cell phones was a text message from January 2, 2017, from appellant's uncle, which stated "Quart, ball, ball!!!" Appellant replied to his uncle's message by saying "Okay." Brotherton testified that in his experience "quart" refers to one-quarter ounce of drugs, or approximately seven grams, and "ball" refers to an "8 ball" or approximately 3.5 grams of drugs.

{¶ 28} Brotherton testified that several days after the stop, on January 6, 2017, he and Detective Adam West transferred the drugs from Sandusky to Toledo where they were packaged and shipped to the DEA lab in Chicago. Detective West was involved in the transport and packaging because he was assigned as a member of the DEA Task Force. Brotherton testified that unlike the Ohio Bureau of Criminal Investigation, the DEA stores the drugs in its laboratory. Brotherton further testified on cross-examination that on January 5, 2017, he conducted a field test on the suspected drugs, which tested positive for cocaine. On September 13, 2019, Brotherton learned that the drugs had been destroyed.

{¶ 29} Finally, Brotherton authenticated recordings of three jail phone calls made by appellant on September 18, 2019, which were then played for the jury. In the calls, appellant contacted a friend, Anthony Crawford, to go to the Motel 6 and speak with the manager, J.B., regarding what she was saying to the police about the January 3, 2017 incident. Appellant referred to J.B. having said that she was going to help him, but appellant then commented that she "turned the other cheek; she did something different." In a later call, appellant stated that J.B. was "making garbage up," and that if "she was going to be on my team, be all the way on my team."

{¶ 30} J.B. testified next. J.B. testified that after January 3, 2017, appellant contacted her and offered her $1,000 to say that Brotherton was standing in the lobby on that day.

{¶ 31} The state also played for the jury a videotaped deposition of Detective Adam West because West was unavailable for the trial. West testified that on January 3, 2017, he was located in Toledo, Ohio, when Brotherton called him asking for information on Deona Green. West testified that he informed Brotherton that Green was one of the top contacts on appellant's phone.

{¶ 32} West next testified about his submission of the suspected drugs to the DEA laboratory on January 6, 2017. West stated that he prepared the DEA-7 form that corresponded with the submission of exhibits 28, 29, 30, and 31. Thereafter, on April 10, 2019, West prepared a DEA "Disposition of Evidence" form for the destruction of exhibits 1-36 in a related federal case. Appellant was not charged in the federal case, but exhibits 28, 29, 30, and 31 were part of the federal government's prosecution. Once that prosecution had been adjudicated, and any applicable appeals had been completed, West received correspondence from the prosecutor that the evidence could be destroyed. West testified

that due to an oversight on his part in his effort to close his case files before he left for five months of training, he completed the form that ordered exhibits 28, 29, 30, and 31 to be destroyed, not remembering that the drugs were being held at the DEA laboratory and that they were evidence in the ongoing state prosecution of appellant. The drugs were ultimately destroyed on August 9, 2019, and notice of that fact was then sent to West.

{¶ 33} The state later called Norm Ratterman over appellant's objection. Ratterman testified that in 2001 he participated in an arrest of appellant where appellant was a passenger in a pickup truck that did not belong to him. A search of the truck revealed approximately two kilograms of cocaine in a cargo bay in the right rear section of the bed of the truck. Appellant was convicted of a crime from that incident.

{¶ 34} Finally, the state recalled Brotherton over appellant's objection. Brotherton testified that on June 4, 2019, he participated in a controlled delivery and search of appellant's residence, which uncovered numerous cell phones, $1,732, a digital scale with cocaine residue on it, and approximately two kilograms of suspected heroin or fentanyl.

{¶ 35} After the state rested, appellant presented several witnesses in his defense. Appellant called Sandusky Police Chief John Orzech who testified to the police department's policies regarding the logging of evidence and the use of body cameras. Orzech also testified regarding a directive that he issued in 2015 that ordered officers not to conduct field tests of suspected heroin.

{¶ 36} Appellant also called Sandusky Police Lieutenant Danny Lewis. Lewis testified that he conducted an inventory search of the blue Chrysler minivan after the suspected drugs had been located and appellant had been arrested. During his inventory search, Lewis found a plastic bag that he believed to be the one that appellant was carrying when he left the motel. The plastic bag was located in the front passenger seat or between the seat and the console, and the bag contained clothing.

{¶ 37} Appellant then called Deonia Green. Green testified that on January 3, 2017, she gave appellant a gift of a robe and a Nautica sweatsuit, and that he would have had it in a bag.

{¶ 38} After the completion of the testimony, evidence, and closing arguments, the trial court instructed the jury. Included in those instructions, over the objection of appellant, was a provision on consciousness of guilt based upon the testimony that appellant offered to bribe one of the witnesses. Ultimately, after deliberations, the jury returned with a verdict of guilty on the sole count of possession of drugs, with additional findings that the amount of cocaine exceeded 100 grams, and that the $2,270 was subject to forfeiture.

{¶ 39} At sentencing, the trial court found that appellant was a major drug offender, and sentenced him to a mandatory 11-year prison term. The court further ordered the $2,270 to be forfeited.

*State v. Jones,* No. E-19-065, 2021 WL 3238829, 2021-Ohio-2621 (July 30, 2021).

8

## II.     RELEVANT PROCEDURAL HISTORY

### A.  <u>Trial Court Proceedings</u>

On July 12, 2017, Mr. Jones was indicted on one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(f), with a major drug offender specification and a forfeiture specification; and one count of trafficking in cocaine in violation of R.C. 2925.03(A)(1) and (C)(4)(g), with the same specifications as Count 1. (ECF No. 10-1, Exhibit 1). Mr. Jones, through counsel, entered a plea of not guilty on all counts on August 31, 2017. (ECF No. 10-2, Exhibit 2). The case was then set for trial.

On November 15, 2017, Mr. Jones, through counsel, filed a motion to suppress evidence derived from the stop, search and seizure of himself and his vehicle on January 3, 2017, as well as subsequent searches on January 20, 2017, of the vehicle owned by Mr. Jones' father, his father's home, and Mr. Jones' cell phone. (ECF No. 10-1, Exhibit 3). The State filed its opposition brief on November 17, 2017. (ECF No. 10-1, Exhibit 4). Mr. Jones filed a reply to his motion to suppress on December 18, 2017. (ECF No. 10-1, Exhibit 5).

On April 16, 2018, the State filed a motion to quash, or in the alternative grant a motion limine, as to more than 20 people who were subpoenaed by the defense to testify at the suppression hearing. (ECF No. 10-1, Exhibit 6). Specifically, the State objected on the grounds that these individuals had no connection to Mr. Jones' case but instead appeared to challenge Detective Brotherton or other members of the Sandusky Police Department. (*Id.*) Mr. Jones filed an opposition brief to the State's motion on April 26, 2024. (ECF No. 10-1, Exhibit 7).

On May 22, 2018, the State filed a supplement to its motion in limine, arguing that the defense was attempting to introduce prior traffic stops that Detective Brotherton initiated over a period of 26 months, and that the evidenced was irrelevant and objectionable for other reasons.

(ECF No. 10, Exhibit 8). Mr. Jones filed an opposition brief in response to the State's supplemental motion in limine on May 29, 2008. (ECF No. 10-1, Exhibit 9).

After the suppression hearing, Mr. Jones filed a post-hearing memorandum on July 24, 2024. (ECF No. 10-1, Exhibit 10). On August 20, 2018, the trial court denied Mr. Jones' motion to suppress. (ECF No. 10-1, Exhibit 11).

On January 22, 2019, Mr. Jones, through counsel, filed a motion to dismiss the indictment, alleging defects as to form. (ECF No. 10-1, Exhibit 12). Mr. Jones replied to the State's opposition to the dismissal of the indictment.[3] On March 14, 2019, the trial court denied the motion to dismiss the indictment. (Exhibit 10-1, Exhibit 14).

On October 1, 2019, the State moved to amend the indictment to insert the words "a schedule II substance" that was left out in Count 1, possession of cocaine. (ECF No. 10-1, Exhibit 15). The trial court granted the amendment to the indictment on October 2, 2019. (ECF No. 10-1, Ex. 16).

On August 19, 2019, The State filed a motion in limine to prohibit Mr. Jones from calling witnesses unrelated to his criminal case. (ECF No. 10-1, Exhibit 17). Mr. Jones filed his opposition brief to the State's motion in limine on September 10, 2019, (ECF No. 10-1, Exhibit 18). The State filed a supplement to its motion in limine on September 11, 2019. (ECF No. 10-1, Exhibit 19.) The trial court ruled in favor of the State, holding that Mr. Jones could not call any witness who were not directly related to his criminal case. (ECF No. 10-1, Exhibit 20).

On October 2, 2019, the State moved to dismiss Count 2 of Trafficking Cocaine, along with its two specifications. (ECF No. 10-1, Exhibit 23). After a jury trial, Mr. Jones was found guilty of possession of cocaine in an amount that was equal to or exceeded 100 grams. (ECF No.

---

[3] The State's memorandum in opposition to the motion to dismiss is not on the docket sheet but is referred to in substance in the trial court's entry. (*See* ECF No. 10-1, Exhibit 14).

10-1, Exhibits 21, 22). On October 18, 2019, the trial court sentenced Mr. Jones to serve a mandatory 11-year sentence. (ECF No. 10-1, Exhibit 24). The trial court also found that Mr. Jones was a major drug offender. (*Id.*)

### B.  Direct Appeal

Mr. Jones, through counsel, filed an appeal to the Sixth District Court of Appeals, Erie County, Ohio. (Exhibit 25, Notice of Appeal). In his brief, Mr. Jones set forth the following assignments of error:

> 1. Mr. Jones was convicted with insufficient evidence and his conviction was against the weight of the evidence in violation of both the Fourteenth Amendment to the United States Constitution and Article I, sec. 14 of the Ohio Constitution. [Tr. 302-967]
>
>> A.  Mr. Jones conviction is against the manifest weight [Tr. 302-967]
>
> 2. The Trial Court errored in violation of the Fourth Amendment to the U.S. Constitution and Article I, Section 14 of the Ohio Constitution when it failed to suppress the evidence allegedly removed from the vehicle Mr. Jones was driving. [Docs. Filed 11/15/17 Motion to Suppress; State's Response filed 11/27/17; Reply filed 12/18/17; [Supp. Tr. 8-322]; [Suppression State's Exhibits 1-4; Defendant's Exhibit's A-F
>
>> A.  Mr. Jones' Sixth Amendment right and Ohio Constitution Art. I, Sec. 10 to the Compulsion Process was violated by the Trial Court [Oral Motion to Disclose Witness during April 19, 2018 Suppress Hearing State's Motion to Quash filed 4/16/18;  Appellant's  Response  filed  4/26/18;  State's  Supplemental Memorandum filed 5/22/18; Appellant's Reply filed 5/24/18; Response filed 5/29/18; 8/6/18 Order; 6/24/19 Notice of 404(B) Evidence; 7/12/19 Defendant's Motion in Limine opposing 404(B)Notice.
>
> 3. The Trial Court errored to the prejudice of Mr. Jones in giving a Consciousness of Guilt Jury Instruction without supporting evidence for it [Jury Instructions] [Tr. 641-658]
>
> 4. The Trial Court errored to the prejudice of Mr. Jones when it permitted the State to Submit testimony of a prior conviction and the judgment entry of that conviction in violation of the Due Process Clause of both the U.S. and Ohio Constitutions. [tr.786 seq.] (Exhibit 26, Appellant's Brief).

(ECF No. 10-1, Exhibit 26). The State filed its appellate brief (ECF No. 10-1, Exhibit 27), and Mr. Jones filed a reply. (ECF No. 10-1, Exhibit 28). On July 30, 2021, the Ohio Court of Appeals

affirmed the judgment of the trial court. (ECF No. 10-1, Exhibit 29; *see also State v. Jones*, No. E-19-065, 2021 WL 3238829, 2021 Ohio 2621 (6th Dist. July 30, 2022)).

Mr. Jones, through new counsel, filed an appeal of the Sixth District's decision to the Ohio Supreme Court on September 7, 2021. (ECF No. 10-1, Exhibit 30). Mr. Jones asserted the following sole proposition of law in his memorandum in support of jurisdiction:

> When a "consciousness of guilt" jury instruction is based on inadmissible evidence, it is contrary to law, and is reversible error.

(ECF No. 10-1, Exhibit 31). The State filed a memorandum in opposition to jurisdiction on October 4, 2021. (ECF No. 10-1, Exhibit 32). On November 23, 2023, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.C.Prac.R. 7.08(B)(4). (ECF No. 10-1, ECF No. 33).

### C.  Motion for New Trial

On September 20, 2022, Mr. Jones, acting pro se, filed a "Belated Motion Requesting a New Trial" pursuant to Ohio Crim. R. 33. (ECF No. 10-1, Exhibit 34). The State filed its brief in opposition on September 26, 2024. (ECF No. 10-1, Exhibit 35.)[4]

### D.  Federal Habeas Corpus

On November 28, 2022 Mr. Jones, acting pro se, filed his federal habeas petition. (ECF No. 1.) His petition raises two grounds for relief:[5]

> **GROUND ONE**: The trial court erred in failing to suppress evidence obtained in violation of the Fourth Amendment
>
> > **Supporting Facts**: The Petitioner's vehicle was stopped by investigating officers without probable cause. The Petitioner was detained for 15 minutes while officer waited for K-9. The subsequent search and seizure was conducted without probable

---

[4] While the Warden attached the trial court and Sixth District docket sheets as exhibits (ECF No. 10-1, Exhibits 37 and 38), the trial court docket does not appear to reflect any ruling on the Mr. Jones' Belated Motion Requesting New Trial.

[5] Mr. Jones' grounds for relief are set forth verbatim.

cause. All of these acts violated Petitioner's Fourth Amendment right against unreasonable search and seizure.

**GROUND TWO**: Trial Court violated the Due Process guarantee of the constitution when it gave a Consciousness of Guilt instruction to the jury.

> **Supporting Facts**: The government presented a witness who had never met Petitioner nor heard his voice. She claimed initially that Petitioner attempted to bribe her. On cross examination, she admitted that the only call she received from jail where Petitioner was confined stated she should call an attorney and "tell the truth." The witness admitted she was not offered a bribe from Petitioner. Therefore, jury instructions on consciousness of guilt were unsupported and deprived Petitioner of a fair trial.

## III.    STANDARDS OF REVIEW AND GOVERNING LAW

### A.  Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d).

The Erie Court of Common Pleas sentenced Mr. Jones, and the Court takes judicial notice that Erie County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Jones' § 2254 petition.

### B.    Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking

13

one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

If a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*,

14

501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.     Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan*, No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

D.    **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub.

L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable
>         application of, clearly established Federal law, as determined by the
>         Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of
>         the facts in light of the evidence presented in the State court proceeding.

*Id.*

To determine whether relief should be granted, the Court must use the "look-through"

methodology and look to the "last explained state-court judgment" on the petitioner's federal claim.

*Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that

a presumption which gives them no effect—which simply 'looks through' them to the last reasoned

decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*,

138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through'

presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at

a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case

differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v.

Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13

(2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings,

as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419

(2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal

habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's

decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

IV.     **ANALYSIS**

A.  **Mr. Jones' Ground One claim fails**

1.  *Ground One is procedurally defaulted*

Mr. Jones argues in his Ground One claim that the trial court erred in failing to suppress evidence obtained in violation of the Fourth Amendment. The Warden argues that this claim is procedurally defaulted because Mr. Jones filed to raise it to the Ohio Supreme Court for review. I agree.

Before seeking a writ of habeas corpus in federal court, a petitioner must properly exhaust his state court remedies by fairly presenting all constitutional claims to all levels of the state courts. A petitioner may procedurally default his constitutional claim by failing to present the claim to all appropriate state courts prior to that through the state's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 847. Ohio's "ordinary appellate review process" means a defendant must timely present his on-the-record constitutional claim to the trial court, court of appeals, and the Ohio Supreme Court on direct review. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003).  Mr. Jones failed to raise this argument to the Ohio Supreme Court.  Indeed, Mr. Jones asserted the following sole proposition of law in his memorandum in support of jurisdiction to the Ohio Supreme Court:

> When a "consciousness of guilt" jury instruction is based on inadmissible evidence, it is contrary to law, and is reversible error.

18

(ECF No. 10-1, ECF No. 10-1.)

To excuse his procedural default, Mr. Jones must establish cause and prejudice. But Mr. Jones offers no explanation regarding any cause that would explain his failure to raise his sufficiency of the evidence claim at every level of the ordinary appellate review process. (ECF Nos. 11, 13.) And because Mr. Jones fails to demonstrate cause, I need not consider whether there was actual prejudice. *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007) (finding that the court need not engage in an actual prejudice analysis where the habeas petitioner fails to establish cause).

Nor can Mr. Jones establish actual innocence because he presents no new, reliable evidence to support such an allegation. *Schlup*, 513 U.S. at 324. Rather, he merely claims that "[u]nder the **Fruit of the poisonous tree** the incriminating evidence against Petitioner had to be suppressed because it stemmed from exploitation of unlawful search." (ECF No. 13, PageID # 1677) (emphasis in original). Accordingly, I recommend that the Court deny and/or dismiss Mr. Jones' Ground One claim because it is procedurally defaulted.

### 2. Ground One is not cognizable

Generally, a writ of habeas corpus cannot be granted on the ground that a petitioner's Fourth Amendment rights were violated if the petitioner had an opportunity to present the claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007); *accord* Ewing v. Ludwick, 134 Fed. Appx. 907, 911 (6th Cir. 2005). Indeed, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced in his trial." *Powell* at 494. Full and fair litigation requires the court to consider: (1) "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim" and (2) "whether

19

presentation of the claim was in fact frustrated because of a failure of that mechanism." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted). If there was an opportunity to raise the claim and the presentation was not frustrated, the petitioner's claim is non-cognizable. *See id*.

The Sixth Circuit Court of Appeals has explained that the *Powell* "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim. *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Thus, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id*. Rather, a court must "presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim." *Id.* In sum, the Sixth Circuit explained that, in considering whether a habeas petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, the court asks: "Did the state courts permit the defendant to raise the claim or not?" *Id.* at 640; *see also Harrington v. Warden, London Corr. Inst.*, No. 1:10-CV-751, 2013 WL 5944193, at *4 (S.D. Ohio Nov. 5, 2013).

Here, Mr. Jones' Fourth Amendment claim is not cognizable because he had an "opportunity for full and fair consideration" of that claim.  Specifically, Mr. Jones filed a motion to suppress based upon alleged violations of his Fourth Amendment rights, the trial court conducted a suppression hearing, and the trial court ultimately ruled against him. (See ECF Nos. 3, 5, 11). Mr. Jones then argued his Fourth Amendment claim on direct appeal, and the Ohio Court of Appeals for the Sixth District also rejected it. (ECF No. 29). Nor does Mr. Jones argue – much less establish – that these proceedings were a sham. As a result, Mr. Jones' Fourth Amendment claim is non-cognizable. See *Good*, 729 F.3d at 640  ("Good could, indeed did, present his

20

suppression motion to the state trial court, and the trial court rejected it. He presented it again to the state appellate court, and the appellate court rejected it once more.") Accordingly, I recommend that the Court dismiss Mr. Jones' Ground One claim as non-cognizable.

## B.  **Mr. Jones' Ground Two claim fails**

Mr. Jones argues in his Ground Two claim that the trial court "violated the Due Process guarantee of the constitution when it gave a Consciousness of Guilt instruction to the jury." (ECF No. 1). In support of this claim, Mr. Jones asserts in his petition that:

> The government presented a witness who had never met Petitioner nor heard his voice. She claimed initially that Petitioner attempted to bribe her. On cross examination, she admitted that the only call she received from jail where Petitioner was confined stated she should call an attorney and "tell the truth." The witness admitted she was not offered a bribe from Petitioner. Therefore, jury instructions on consciousness of guilt were unsupported and deprived Petitioner of a fair trial.

(*Id.*) Mr. Jones further argues in his traverse that the trial court erred when it abused its discretion by giving a consciousness of guilt jury instruction without supporting evidence. (ECF No. 17, PageID # 1744-46). The Warden maintains that Mr. Jones' Ground Two claim is not cognizable. (ECF No. 10). I agree.

"Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review." *Carter v. Winn*, No. 20-cv-10575, 2023 WL 4875868, at *5 (E.D. Mich. July 31, 2023)*. Rather, "a Petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Id.* (citing *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977); *Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000)). "A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Carter,* 2023 WL 4875868, at *5 (citing *Jones v. United States*, 527

U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996)). Significantly, "[s]tate law instructional errors rarely form the basis for federal habeas relief." *Carter,* 2023 WL 4875868, at *5 (citing *Estelle*, 502 U.S. at 71-72.)

The Erie Court of Appeals rejected on appeal essentially the same argument Mr. Jones advances here and held that the trial court did not abuse its discretion when it gave the jury instruction on consciousness of guilt.:

{¶ 58} In his third assignment of error, appellant argues that the trial court erred when it gave an instruction to the jury on consciousness of guilt.

{¶ 59} We review the trial court's decision to include a requested jury instruction for an abuse of discretion. State v. Harper, 2017-Ohio-1395, 89 N.E.3d 141, ¶ 48 (6th Dist.), citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 60} "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. "A jury instruction on consciousness of guilt is appropriate when the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *State v. Taylor*, 6th Dist. Lucas No. L-12-1037, 2013-Ohio-3066, ¶ 29.

{¶ 61} Here, the trial court instructed the jury,

Testimony has been admitted indicating that the Defendant attempted to bribe a witness. You are instructed that attempting to bribe a witness alone does not raise a presumption of guilt, but it may tend to indicate the Defendant's consciousness and/or awareness of guilt.

If you find the facts do not support the fact – the allegation that the Defendant attempted to bribe a witness, or if you find that some other motive prompted the Defendant's conduct, or if you are unable to decide what the Defendant's motivation was, then you should not consider this evidence for any purpose.

However, if you find that the facts support that the Defendant engaged in such conduct, and if you decide that the Defendant was motivated by a consciousness of and/or awareness of guilt, you may, but are not required to, consider the evidence in deciding whether the Defendant is guilty of the crime charged. You alone will determine what weight, if any, to be given to this evidence.

{¶ 62} At the outset, we hold that evidence of attempted bribery of a witness is sufficient to warrant a jury instruction on consciousness of guilt. *See State v. Leu*, 2019-Ohio-3404, 142 N.E.3d 164, ¶ 39 (6th Dist.) ("Evidence of the attempted bribery of a witness by a defendant is admissible against that defendant since such an attempt demonstrates consciousness of guilt.").

{¶ 63} Appellant, however, argues that the jury instruction was not appropriate in this case because the evidence does not demonstrate that he attempted to bribe J.B. In particular, appellant argues that J.B. admitted that she had never met appellant and could not recognize his voice, and thus she acknowledged that "it could have been anybody" on the phone offering her $1,000 to lie and state that Brotherton was in the lobby of the motel. We find appellant's characterization of J.B.'s testimony to be incomplete. On cross-examination, J.B. testified that her ex-boyfriend, J.M. knew appellant. J.M. contacted J.B. at work and informed her that appellant wanted her to lie for him. J.B. then gave her cell phone number to J.M., and as soon as she did she received a call from someone who identified himself as appellant. It was the person who identified himself as appellant that offered J.B. $1,000 to lie about Brotherton. Thus, although it may be possible that the person who identified himself as appellant actually may have been someone else, we find that reasonable minds could conclude that it in fact was appellant who offered the bribe to J.B. Therefore, we hold that the trial court did not abuse its discretion when it gave the jury instruction on consciousness of guilt.

{¶ 64} Accordingly, appellant's third assignment of error is not well-taken.

*State v. Jones,* No. E-19-065, 2021 WL 3238829, at *10-11 (Sixth Dist. July 30, 2021).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, with respect to the state court's ruling that the instruction was proper, federal courts are bound by the state courts' interpretation of their own laws. *See Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court on habeas review"). The nature of a particular jury instruction that is given is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus simply because the federal court finds the state court's decision was incorrect under state law. *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003). Because the Sixth District Court of Appeals found that Ohio law supported the consciousness of guilt

instruction here, this Court must defer to that determination and cannot question it. *See Seymour v. Walker*, 224 F. 3d 542, 558 (6th Cir. 2000).

Second, Mr. Jones makes no colorable argument that the jury instruction rendered his trial fundamentally unfair. As the Sixth District Court of Appeals correctly noted, reasonable minds could conclude based upon the evidence at trial that Mr. Jones offered the bribe to J.B. Therefore, the jury instruction did not amount to a constitutional violation. Accordingly, habeas relief is not warranted on this claim.

## V.    RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].").

Mr. Jones has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find this conclusion to be debatable, I recommend that no Certificate of Appealability issue in this case.

## VI.    RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Jones' petition for writ of habeas corpus under 28 U.S.C. § 2254. I also RECOMMEND that the Court not grant him a Certificate of Appealability. Finally, I also recommend that Warden Tom Watson should be substituted for Warden Dennis Sullivan as the Respondent in this case.

Dated: September 30, 2024

        *s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge

## VII.   NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings,

> recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).